UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                            )
RONALD CIANCIULLI                           )
                                            )
            Plaintiff,                      )        CIVIL ACTION NUMBER:
                                            )        _____
      v.                                    )
                                            )        JURY TRIAL DEMANDED
DEVAN MOTORS OF NORWALK, INC.,              )
DEVAN MOTORS OF FAIRFIELD, INC.,            )
DAG MOTORS OF WILTON, LLC, and             )
DEVAN AUTO GROUP,                           )
                                            )
            Defendants.                     )
_____)

## **COMPLAINT AND JURY DEMAND**

## **PARTIES**

1.      The Plaintiff, Ronald Cianciulli ("Mr. Cianciulli" or the "Plaintiff"), is a 68-year-old (born 1953) male resident of the state of Connecticut, residing at 142 Twin Lakes Road, North Branford, Connecticut, 06850. North Branford is in New Haven County.

2.      Defendant Devan Motors of Norwalk, Inc. (the "Norwalk") is a domestic for-profit corporation doing business in the state of Connecticut.  Norwalk is incorporated in Connecticut and its principal office is located at 625 West Ave, Norwalk, CT 06850.

3.      Defendant Devan Motors of Fairfield, Inc. ("Fairfield") is a domestic for-profit corporation doing business in the state of Connecticut.  Fairfield is incorporated in Connecticut and its principal office is located at 26 Commerce Drive, Fairfield, CT 06825.

4.      Defendant DAG Motors of Wilton, LLC ("Wilton") is a domestic for-profit corporation doing business in the state of Connecticut.  Wilton is incorporated in Connecticut and its principal office is located at 190 Danbury Road, Wilton, CT 06897.

5. Defendant Devan Auto Group (the "Auto Group") (Norwalk, Fairfield, Wilton, and the Auto Group, individually and collectively, the "Company" or the "Defendants") is a partnership of auto dealerships operating as the Devan Auto Group. The Auto Group's general partners include Norwalk, Fairfield, and Wilton. The Auto Group's partners share the same management structure and the same employment policies. Upon information and belief, the Auto Group's partners intermingle funds, share profits and losses between the partners, and are run by the same upper-level management team.

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, the Americans with Disabilities Act, and the Family and Medical Leave Act. The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

7. This court has personal jurisdiction over the Defendants because the Defendants are residents of the State of Connecticut because they are incorporated in the State of Connecticut and/or their principal places of business are in Connecticut. Further, the Defendants have engaged in and transacted business in the State of Connecticut, including by managing and/or operating a business in Connecticut and/or employing the Plaintiff in Connecticut, and Plaintiff's causes of action stem largely from Defendants' business transactions within the State of Connecticut. Indeed, the Plaintiff was employed by the Defendants in the State of Connecticut, was managed and supervised by Defendants in the State of Connecticut, was discriminated against by the Defendants in the State of Connecticut and was terminated by the Defendants in the State of Connecticut.

## STATEMENT OF FACTS

8.      In or around 2008, Mr. Cianciulli began employment with the Company as the Parts Department Manager in the Company's dealership facility located in Norwalk, CT.

9.      Notably, Norwalk is part of a family of integrated companies known as Devan Auto Group, which consists of Fairfield, Norwalk, and Wilton.

10.      Thus, other companies within the Devan Auto Group, including Fairfield and Wilton, were, together with Norwalk, a single integrated employer (under standards established by the FMLA and other applicable laws), and were also, each individually, and collectively, joint employers of Mr. Cianciulli.

11.      Importantly, upon information and belief, at all relevant times each of the companies within the Auto Group (including each of Fairfield, Wilton, and Norwalk) had the same management structure, had significant interrelation between operations, had significant centralized control of labor relations, and had a significant degree of common ownership/financial control.

12.      In addition, each of the companies within the Auto Group (including each of Fairfield, Wilton, and Norwalk) had the same employee handbook and the employees were governed by the same employee policies.

13.      Furthermore, the management team of the Company (including Fairfield, Wilton, Norwalk, and the Auto Group) had the power to make hiring and firing decisions regarding employees (including Mr. Cianciulli), could dictate the hours worked of employees (including Mr. Cianciulli), and maintained records of hours employees worked and handled payroll.

14.      Upon information and belief, each of the companies of the Auto Group (including each of Fairfield, Wilton, and Norwalk) shared and/or comingled funds and acted as a partnership in fact.

15. Fairfield, Wilton, and Norwalk during the relevant time periods of Mr. Cianciulli's employment acted as joint employers with regard to Mr. Cianciulli and, as such, at all relevant times were his joint employers.

16. At all relevant times, the Company (including each of Fairfield, Wilton, Norwalk, and the Auto Group individually) employed 20 or more employees during 20 or more calendar weeks during the relevant calendar years.

17. Accordingly, at all relevant times, the Company (including each of Fairfield, Wilton, Norwalk, and the Auto Group individually) was an employer under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and Conn. Gen. Stat. § 46(a)-60.

18. At all relevant times, the Company (including each of Fairfield, Wilton, Norwalk, and the Auto Group both individually and when analyzed as joint and/or integrated employers under applicable FMLA standards) employed 50 or more employees during 20 or more calendar workweeks during the relevant calendar years.

19. Accordingly, at all relevant times, the Company was an employer under the Family and Medical Leave Act ("FMLA").

20. At all relevant times, Mr. Cianciulli's performance with the Company was satisfactory. Indeed, due to his performance with the Company, Mr. Cianciulli received a number of merit-based pay raises throughout his employment.

21. Prior to his employment with the Company, Mr. Cianciulli was diagnosed with diabetes and chronic gouty arthritis ("gout").

22. Diabetes is an impairment which substantially limits one or more of Mr. Cianciulli's major life activities, including, but not limited to, exercising and walking.

Furthermore, diabetes is an impairment which substantially limits the operation of one or more of Mr. Cianciulli's major bodily functions, including, but not limited to, his circulatory and endocrine system. As such, Mr. Cianciulli is (and at all relevant times was) disabled under Connecticut law and Federal law.

23.     Gout is an impairment which substantially limits one or more of Mr. Cianciulli's major life activities, including, but not limited to, walking, bending, and standing. Furthermore, gout is an impairment which substantially limits the operation of one or more of Mr. Cianciulli's major bodily functions, including, but not limited to, his circulatory system. As such, Mr. Cianciulli is (and at all relevant times was) further disabled under Connecticut law and Federal law.

24.     The Company did not know about Mr. Cianciulli's disabilities at the time he was given an offer of employment at the Company.

25.     Shortly after Mr. Cianciulli began working at the Company, his disabilities became generally known throughout the Company.

26.     Indeed, Mr. Cianciulli occasionally mentioned his disabilities in conversations, including in conversations with the general manager, Amy Teerlinck ("Ms. Teerlinck"), who supervised Mr. Cianciulli.

27.     Upon information and belief, Ms. Teerlinck is a non-disabled individual who is at least 20 years younger than Mr. Cianciulli is.

28.     Beginning in or around 2015, the symptoms of Mr. Cianciulli's disabilities began flaring up more frequently and more severely.

29.     For instance, in or around 2018, Mr. Cianciulli experienced a very severe flare up of cellulitis (a severe skin infection related to his diabetes disability) on his leg and was hospitalized due to this.

30.     Due to the severe symptoms Mr. Cianciulli was experiencing, he contacted the Company, disclosed he was suffering from disability related symptoms, and requested the reasonable disability-related accommodation of a short medical leave (which lasted approximately 10 days) to obtain treatment due to his disability.

31.     At all relevant times, the Company (including each of Fairfield, Wilton, Norwalk, and the Auto Group both individually and when analyzed as joint and/or integrated employers under applicable FMLA standards) employed 50 or more employees within a 75-mile radius of the worksite where Mr. Cianciulli worked, including at all points from January 1, 2018 to June 12, 2020.

32.     Furthermore, at all relevant times, Mr. Cianciulli had been an employee for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period, including at all points from January 1, 2018 until June 12, 2020. As such, Mr. Cianciulli was an eligible employee for FMLA leave, as well as CT FMLA leave.

33.     The symptoms Mr. Cianciulli was experiencing, which were a result of his diagnosed disability(ies), constituted a serious medical condition, which caused periods of incapacity and/or required continuing treatment and served as a legitimate basis for protected leave for FMLA / CT FMLA purposes.

34.     As such, Mr. Cianciulli was an eligible employee for leave protected under the FMLA / CT FMLA.

35.     During a similar period (especially beginning in 2015), Mr. Cianciulli was also experiencing more frequent flare ups of his gout disability, which resulted in severe inflammation, pain in his joints, and a noticeable limp when he walked.

36.     Notably, when Mr. Cianciulli experienced disability-related flare ups like this, the general manager, Ms. Teerlinck would remark on Mr. Cianciulli's condition and comment on the fact that he (Mr. Cianciulli) was having trouble walking.

37.     In fact, Ms. Teerlinck also frequently made comments to Mr. Cianciulli relating to his age, including, but not limited to, questioning Mr. Cianciulli as to when he would be retiring and/or asking when Mr. Cianciulli would be leaving the Company (in a manner that made it clear she was referring to retirement and/or Mr. Cianciulli's age).

38.     Importantly, at no point prior to these comments had Mr. Cianciulli indicated that he planned to retire any time soon. Indeed, Mr. Cianciulli anticipated working for the foreseeable future.

39.     Due to Mr. Cianciulli's disabilities, it was medically necessary that he attended frequent doctor's appointments in order to obtain ongoing treatment and/or medical checkups.

40.     Mr. Cianciulli informed Ms. Teerlinck and other Company management that he suffered from diabetes and gout and explained the pain and limitations caused by these disabilities.

41.     Accordingly, Ms. Teerlinck knew Mr. Cianciulli suffered from diabetes and gout disabilities.

42.     In addition, Mr. Cianciulli would inform Ms. Teerlinck of his disability-related doctor's appointments and on multiple occasions requested the reasonable disability-related accommodation of attending these medical appointments.

43. These disability-related accommodation requests (and the time off he took as a result) further qualified as intermittent leave protected under the FMLA/CT FMLA.

44. While Ms. Teerlinck initially approved Mr. Cianciulli's requests, in or around 2019, Mr. Cianciulli's health condition worsened, and he needed to utilize his requested reasonable accommodation of time off more frequently.

45. As Mr. Cianciulli began requesting more time off to treat his disabilities (including by attending medical appointments), Ms. Teerlinck grew increasingly annoyed with Mr. Cianciulli's disability-related requests and/or made clear she resented the fact that he (Mr. Cianciulli) was disabled.

46. Notably, these requests were not an undue burden on the Company, as they were only occasional (once or twice per month) and Mr. Cianciulli would try to schedule his appointments in such a way that he would only need to arrive a little late to work and/or leave a little early from work, thereby avoiding missing a whole day of work.

47. Despite this, Ms. Teerlinck negatively remarked on the number and frequency of Mr. Cianciulli's disability-related doctor's appointments. It was clear through her body language and demeanor her comments were made in a discriminatory and/or retaliatory manner based on Mr. Cianciulli's age and/or disability.

48. In or around 2019, Ms. Teerlinck also began to demand Mr. Cianciulli train a significantly younger employee in the parts department, Ralph Matos ("Mr. Matos"). Notably, Ms. Teerlinck explained she wanted Mr. Matos trained because of Mr. Cianciulli's continuing health issues.

49. Mr. Matos is in his 30's and, upon information and belief, is not disabled.

50.    Notably, Mr. Matos had been employed with the Company for several years and, as such, it was suspicious that Ms. Teerlinck was suddenly requesting Mr. Cianciulli to train him.

51.    When Mr. Cianciulli questioned Ms. Teerlinck as to why he was being asked to train Mr. Matos to replace himself (Mr. Cianciulli) when he (Mr. Cianciulli) had no intention of leaving the Company anytime soon, Ms. Teerlinck would curtly explain that Mr. Cianciulli had "health issues" and that he would not be at the Company forever.

52.    In or around late 2019, Mr. Cianciulli experienced a flare up of symptoms related to his diabetes, including increased diabetic ulcers and sores in his leg that were exacerbated by inflammation and fluid retention (related to Mr. Cianciulli's diabetes).

53.    Due in part to the diabetic sores Mr. Cianciulli was experiencing, he was required to see a specialist on a weekly basis for a number of weeks in order to obtain medically necessary treatment.

54.    The symptoms Mr. Cianciulli was experiencing, which were a result of his diagnosed disability, constituted a serious medical condition causing periods of incapacity and continuing treatment and served as a legitimate basis for protected leave for FMLA/ CT FMLA purposes.

55.    Indeed, Mr. Cianciulli's request for a disability-related accommodation of intermittent leave to attend medically necessary appointments and/or treat his disabilities further qualified as a request for leave under the FMLA and the CT FMLA.

56.    Notably, around this same time, Mr. Cianciulli contacted Ms. Teerlinck and informed her of the symptoms he was now experiencing due to his disability.

57.     Mr. Cianciulli further requested the reasonable disability-related accommodation of arriving to work later than normal on the few days he needed to attend his appointments with the specialist.

58.     While Ms. Teerlinck informed Mr. Cianciulli his request was granted, it was abundantly clear she was bothered and irritated by his request, including by asserting it was too much work for the office manager to adjust Mr. Cianciulli's hours for the week.  That said, other than showing irritation, neither Ms. Teerlinck nor any other management at the Company engaged in any interactive dialogue with Mr. Cianciulli concerning his disability-accommodation requests.

59.     On or around March 20, 2020, Mr. Cianciulli was contacted by Ms. Teerlinck and suddenly informed he was being furloughed, allegedly due to the COVID-19 pandemic.

60.     It also was indicated the Company was still going to be operating during this time, and Mr. Matos would remain employed and actively working in order to run the parts department.

61.     When Mr. Cianciulli raised protected discrimination concerns about why he, an older disabled employee, was being furloughed (and the younger non-disabled Mr. Matos was not), Ms. Teerlinck eventually explained Mr. Cianciulli was being furloughed because he was "higher risk."

62.     This was a clear reference to the fact that Mr. Cianciulli was disabled, including that the Company viewed Mr. Cianciulli as being "higher risk" related to the COVID-19 pandemic because of his disabilities.

63. It was abundantly clear through this statement by Ms. Teerlinck that the Company had decided to furlough Mr. Cianciulli (rather than the younger Mr. Matos), due to his (Mr. Cianciulli's) age and/or his disabilities.

64. Indeed, upon information and belief, the Company singled Mr. Cianciulli out for furlough and did not furlough a number of other younger non-disabled employees who had less seniority and less qualifications than Mr. Cianciulli.

65. Mr. Cianciulli did not receive pay during his furlough, and the furlough thus amounted to an unpaid suspension.

66. After this conversation, Mr. Cianciulli periodically contacted Ms. Teerlinck in order to determine the status of his employment. During these conversations he asked on multiple occasions to be recalled from furlough and allowed to return.

67. Ms. Teerlinck was increasingly dismissive of Mr. Cianciulli and his requests to be recalled and refused to provide Mr. Cianciulli with further details regarding his employment.

68. On or around June 12, 2020, Ms. Teerlinck contacted Mr. Cianciulli and informed him for the first time that he was being permanently terminated.

69. As such, Mr. Cianciulli was involuntarily terminated on or around June 12, 2020. Indeed, as of June 12, 2020, Mr. Cianciulli's benefits were cut off.

70. Notably, the Company's conduct demonstrates a pattern of terminating older and/or disabled employees in a discriminatory manner.

71. Indeed, upon information and belief, Joe Murphy ("Mr. Murphy") (a sales manager in his mid-50's) was terminated without meaningful justification in a similar manner on or around the same day Mr. Cianciulli was terminated.

72.     Importantly, similarly situated younger, non-disabled employees were not terminated.

73.     Furthermore, upon information and belief, Mr. Cianciulli was replaced by a younger non-disabled employee, Mr. Matos, who was promoted to Parts Manager (the position Mr. Cianciulli had previously occupied) shortly Mr. Cianciulli's employment ended.

74.     On or around September 4, 2020, Mr. Cianciulli timely filed a Charge of Discrimination (the "Charge") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") (No. 2120128) and the United States Equal Employment Opportunity Commission (the "EEOC") (Charge No. 16A-2020-01484).

75.     In addition to his Charge against Norwalk, Mr. Cianciulli also timely filed Charges of Discrimination with the EEOC against Wilton (Charge No. 523-2021-01142), Fairfield (Charge No. 523-2021-01141), and the Auto Group (Charge No. 523-2021-01143).

76.     On or around March 19, 2021, the State of Connecticut Commission on Human Rights and Opportunities released its jurisdiction for Charge No. 211045.

77.     Mr. Cianciulli notified the EEOC of his intent to file a complaint in court and, accordingly, requested that the EEOC release jurisdiction and permit Mr. Cianciulli to file in court.

78.     The EEOC released its jurisdiction on all Charges of Discrimination Mr. Cianciulli filed against the Company and issued a Right to Sue notice with respect to Norwalk on or around March 19, 2021 and with respect to Wilton, Fairfield and the Auto Group on April 8, 2021.

79.     This Complaint is timely filed in compliance within the timeframes of relevant laws and requirements.

**COUNT I**

**(Discrimination Based on Age in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. All Defendants**

80.     Mr. Cianciulli incorporates all paragraphs above and below as if set forth fully herein.

81.     The Company (including all of the Defendants individually and collectively) is an employer under the definitions applicable to Conn. Gen. Stat. § 46a-60 because the Company (including each of the Defendants individually and collectively) employed three or more persons.

82.     At all relevant times, Mr. Cianciulli was over 40 years old.

83.     The Company, by and through its agents, discriminated against Mr. Cianciulli with respect to his compensation, terms, conditions, or privileges of employment because of Mr. Cianciulli's age.

84.     More specifically, the Company subjected Mr. Cianciulli to adverse actions because of his age, including, but not limited to, a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and the termination of Mr. Cianciulli's employment, because Mr. Cianciulli was over 40 years old, because of Mr. Cianciulli's age, and/or because Mr. Cianciulli was an older disabled individual ("age plus" discrimination).

85.     The Company's actions against Mr. Cianciulli were wanton, willful and malicious.  The Company acted willfully and/or with reckless disregard to the state protected rights of Mr. Cianciulli.

86.     As a direct and proximate result of the Defendants' violations of Conn. Gen. Stat. § 46a-60, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

87.     Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

### (Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)

### Plaintiff v. All Defendants

88.     Mr. Cianciulli incorporates all paragraphs above and below as if set forth fully herein.

89.     During all relevant times, the Defendants (including each of the Defendant entities individually and collectively) were employers under the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. seq. (hereinafter the "ADEA") because they each individually employed more than 20 persons for 20 or more calendar weeks within the previous 12-month period.

90.     At all relevant times, Mr. Cianciulli was over 40 years old.

91.     The Company, by and through its agents, discriminated against Mr. Cianciulli with respect to his compensation, terms, conditions, or privileges of employment because of Mr. Cianciulli's age.

92.     More specifically, the Company subjected Mr. Cianciulli to adverse actions because of his age, including, but not limited to, a furlough, the failure to recall and/or re-hire

Mr. Cianciulli, and the termination of Mr. Cianciulli's employment, because Mr. Cianciulli was over 40 years old, because of Mr. Cianciulli's age, and/or because Mr. Cianciulli was an older disabled individual ("age plus" discrimination).

93.     The Company's actions against Mr. Cianciulli were wanton, willful and malicious.  The Company acted willfully and/or with reckless disregard to the federally protected rights of Mr. Cianciulli.

94.     As a direct and proximate result of the Defendants' violations of the ADEA, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

95.     Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, emotional distress damages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

**COUNT III**

**(Discrimination Based on Disability in Violation of Conn. Gen. Stat. § 46a-60)**
**Plaintiff v. All Defendants**

96.     Mr. Cianciulli incorporates all paragraphs above and below as if set forth fully herein.

97.     At all relevant times, the Company (including each of the Defendant entities individually and collectively) employed four or more persons.

98.     The Company is an employer under the definitions applicable to Conn. Gen. Stat. § 46a-60 because the Company employed four or more persons.

99.     Mr. Cianciulli suffers (and at all relevant times suffered) from disabilities, including, diabetes and gout.  Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of his major life activities, including walking.  They further substantially limit the operations of one or more of his major bodily functions, including his circulatory functions.  Accordingly, Mr. Cianciulli is (and at all relevant times was) disabled under the Conn. Gen. Stat. § 46a-60.

100.    At all relevant times, Mr. Cianciulli was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

101.    Mr. Cianciulli disclosed his disabilities to the Defendant, and/or the Defendants was aware of Mr. Cianciulli's disabilities, and/or the Defendants regarded Mr. Cianciulli as disabled.

102.    The Defendants discriminated against Mr. Cianciulli due to his disabilities by subjecting Mr. Cianciulli to adverse actions, including, but not limited to, subjecting Mr. Cianciulli to a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and/or terminating Mr. Cianciulli's employment because of the Plaintiff's disabilities.

103.    Upon information and belief, the Company replaced Mr. Cianciulli with a lesser or similarly qualified, non-disabled employee.

104.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cianciulli and/or conduct so reckless to amount to such disregard.

105.     As a direct and proximate result of the Defendants' violations of Conn. Gen. Stat. § 46a-60, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

106.     Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT IV

**(Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Mr. Cianciulli v. All Defendants**

107.     Mr. Cianciulli incorporates all paragraphs above and below as if set forth fully herein.

108.     During all relevant times, the Company (including each of the Defendant entities individually and collectively) was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

109.     Mr. Cianciulli suffers (and at all relevant times suffered) from disabilities, including, diabetes and gout. Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of his major life activities, including walking.

They further substantially limit the operations of one or more of his major bodily functions, including his circulatory functions. Accordingly, Mr. Cianciulli is (and at all relevant times was) disabled under the ADA.

110. At all relevant times, Mr. Cianciulli was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

111. Mr. Cianciulli disclosed his disabilities to the Defendants, and/or the Defendants were aware of Mr. Cianciulli's disabilities, and/or the Defendants regarded Mr. Cianciulli as disabled.

112. Mr. Cianciulli requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, protected leaves of absence to treat his disabilities (including by attending doctor's appointments) and flexibility with his schedule.

113. The Defendants discriminated against Mr. Cianciulli due to his disabilities by subjecting Mr. Cianciulli to adverse actions, including, but not limited to, subjecting Mr. Cianciulli to a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and/or terminating Mr. Cianciulli's employment.

114. Upon information and belief, the Company replaced Mr. Cianciulli with a lesser or similarly qualified, non-disabled employee.

115. The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cianciulli and/or conduct so reckless to amount to such disregard.

116.     As a direct and proximate result of the Defendants' violations of the ADA, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

117.     Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT V

### (Retaliation in Violation of Conn. Gen. Stat. § 46a-60)

### Plaintiff v. All Defendants

118.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

119.     The Plaintiff engaged in protected activity under Conn. Gen. Stat. § 46a-60, including, but not limited to, by opposing practices made unlawful by Conn. Gen. Stat. § 46a-60, by requesting and/or utilizing one or more disability-related reasonable accommodations, and/or by expressing protected concerns regarding the discriminatory actions improperly undertaken by the Company based on the age and/or disabilities of the Plaintiff.

120.     The Company retaliated against the Plaintiff and/or discriminated against the Plaintiff for engaging in protected activities, including opposing one or more acts or practices made unlawful by Conn. Gen. Stat. § 46a-60, including by subjecting Mr. Cianciulli to adverse

actions, including, but not limited to, subjecting Mr. Cianciulli to a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and/or the termination of Mr. Cianciulli's employment in whole or in part because he engaged in protected activity.

121.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cianciulli and/or conduct so reckless to amount to such disregard.

122.    As a direct and proximate result of the Company's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

123.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VI

**(Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)**

**Plaintiff v. All Defendants**

124.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

125.     The Plaintiff engaged in protected activity under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., including, but not limited to, by opposing activity that violated the ADEA, as well as by expressing protected concerns, and/or engaging in other protected activity, related to age discrimination.

126.     The Company retaliated against the Plaintiff for engaging in such opposition to age discrimination, by subjecting Mr. Cianciulli to adverse actions, including, but not limited to, a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and the ultimate termination of Mr. Cianciulli's employment.

127.     The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Cianciulli's exercising of, or enjoyment of, one or more rights granted by the ADEA.

128.     The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Cianciulli and/or conduct so reckless to amount to such disregard.   Indeed, the Defendants willfully violated the ADEA.

129.     As a direct and proximate result of the Company's violations of the ADEA, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

130.     Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, emotional distress damages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

# COUNT VII

## (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

## Mr. Cianciulli v. All Defendants

131.    Mr. Cianciulli incorporates all paragraphs above and below as if set forth fully herein.

132.    Mr. Cianciulli engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity related to the discriminatory actions taken by the Company due to Mr. Cianciulli's disabilities and/or(ii) requesting and/or utilizing reasonable accommodations for disabilities which were intended to allow Mr. Cianciulli to perform the essential functions of his job.

133.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Cianciulli's exercising of, or enjoyment of, one or more rights granted by the ADA.

134.    More specifically, the Company subjected Mr. Cianciulli to adverse actions, including but not limited to, subjecting Mr. Cianciulli to a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and/or terminating Mr. Cianciulli's employment because he engaged in protected activity under the ADA.

135.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Cianciulli.

136.    As a direct and proximate result of the Company's violation of the ADA, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

137.     Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT VIII

### (Retaliation for Exercising Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)

### Mr. Cianciulli v. All Defendants

138.     Mr. Cianciulli incorporates all paragraphs above and below as if set forth fully herein.

139.     During all relevant times, the Company (including each of the Defendants individually) was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

140.     As such, at all relevant times, the Company was an employer under the FMLA.

141.     At all relevant times, the Company (including each of the Defendants both individually and as a collective integrated/joint employer) employed 50 or more employees within 75 miles of Mr. Cianciulli's worksite.

142.     The other companies within Devan Auto Group, including Fairfield and Wilton, were, together with Norwalk, a single integrated employer (under standards established by the FMLA and other applicable laws).

143.     Importantly, upon information and belief, each of the companies within the Auto Group had the same management structure, had significant interrelation between operations, had

significant centralized control of labor relations, and a significant degree of common ownership/financial control.

144.     In addition, each of the companies within the Auto Group had the same employee handbook and the employees were governed by the same employee policies.

145.     At all relevant times (including from January 2018 onward), Mr. Cianciulli had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

146.     As such, from January 2018 onward, Mr. Cianciulli was an eligible employee under the FMLA.

147.     Mr. Cianciulli suffered from one or more serious health conditions for which he received continuing care, including, but not limited to, his diabetes and gout.

148.     Mr. Cianciulli was entitled to FMLA leave.

149.     Mr. Cianciulli sought to exercise his rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

150.     Specifically, Mr. Cianciulli requested and utilized intermittent FMLA leave in the form of taking leave for disability-related medical appointments and treatment.

151.     Mr. Cianciulli also requested and utilized continuous FMLA leave in the summer of 2018.

152.      Mr. Cianciulli timely notified the Defendants that he would need FMLA leave and timely turned in all requested paperwork and information related to his FMLA leave requests and utilization of FMLA leave.

153.     The Defendants, including by and through its agents, retaliated and/or discriminated against Mr. Cianciulli for requesting and/or utilizing FMLA leave by subjecting

Mr. Cianciulli to adverse actions, including, but not limited to, subjecting Mr. Cianciulli to a furlough, the failure to recall and/or re-hire Mr. Cianciulli, and/or terminating Mr. Cianciulli' employment.

154.    The Defendants' actions were willful and undertaken in bad faith.

155.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Cianciulli has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

156.    Mr. Cianciulli seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

WHEREFORE, the Plaintiff, Ronald Cianciulli, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including, but not limited to, damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his reasonable attorneys' fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

RONALD CIANCIULLI

By his attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: 4/26/2021                    By:     /s/ Michael R. Varraso (Ct307777)

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
CT State Bar: 437487
D. Conn. No.: ct29994

Michael R. Varraso
mvarraso@wyattlegalservices.com
CT State Bar: 439521
D. Conn. No.: ct307777

The Law Offices of Wyatt & Associates,

P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868